NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4061-12T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MAYTEE CORDERO, a/k/a MAYTTEE
CORDERO, a/k/a TETI CORDERO,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

December 29, 2014

APPELLATE DIVISION

Submitted October 7, 2014 – Decided December 29, 2014

Before Judges Messano, Ostrer and Hayden.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 11-12-1792.

Joseph E. Krakora, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Andrew C. Carey, Middlesex County Prosecutor, attorney for respondent (Jason Boudwin, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

Defendant Maytee Cordero appeals from her conviction, after a jury trial, of third-degree shoplifting, N.J.S.A. 2C:20-11(b). The shoplifting incident involved the taking of over $1700 of

merchandise from the Apple Store at Menlo Park Mall on July 26, 2011. Her co-defendant, Chris Perez, removed various items from the accessory wall and placed them into two large Abercrombie & Fitch (A&F) clothing bags that defendant was holding. Defendant and Perez then left the store without paying for the products.[1]

The appeal requires us to address when it is appropriate for a trial court to rule on the admissibility of other-crimes-or-wrongs evidence under N.J.R.E. 404(b), when offered to rebut a defendant's proffered mistake, or lack of intent. The State sought an in limine ruling permitting it to introduce evidence of a previous alleged shoplifting incident at a Target store that involved defendant, Perez and a third person. The evidence was a video of that incident, as well as a recorded statement defendant gave shortly thereafter. The State proposed to use the evidence to rebut a proffered defense, set forth in a letter from defense counsel, that Cordero did not intend to shoplift from the Apple Store, and her removal of the items without paying was a mistake, as she was unaware Perez placed items in the bags.[2]

---

[1] Perez pleaded guilty several months before defendant's trial, and was sentenced to a three-year prison term.

[2] The record before us does not include the video, defendant's statement, or defense counsel's letter.

Judge Joseph Paone declined to hold a formal hearing under N.J.R.E. 104, or issue a definitive ruling in advance of defendant's testimony. However, to assist defendant in deciding whether to testify, the judge offered his tentative view that the 404(b) evidence was likely admissible. He did so before opening statements. After the State rested and the judge viewed the video, he reiterated his tentative view.

On appeal, defendant argues that the court erred in refusing to issue a definitive ruling. She asserts that the tentative ruling was erroneous and infringed upon her right to testify. She also asserts the prosecutor committed misconduct in his summation.

We conclude that a trial court, in its discretion, may await the close of a defendant's case before determining the admissibility of 404(b) evidence that the State seeks to introduce to rebut the defendant's claim of lack of intent or mistake. We also discern no error in the court's decision to offer a tentative view of the issue. Finally, defendant's claim of prosecutorial misconduct lacks sufficient merit to warrant extended discussion. We therefore affirm.

A-4061-12T1

I.

A.

The State presented its case through the testimony of two of the Apple Store's loss prevention officers — Steve G. Yhap and Felix Melendez. The jury also heard briefly from the Edison Township police patrolman who arrested defendant and Perez.

Yhap and Melendez were in plain clothes while they monitored customers in the store. Yhap testified he saw Perez enter the store, look around while talking on his cell phone, then exit. Shortly thereafter, Perez entered again, accompanied by defendant. She was carrying two large A&F shopping bags. They both walked to one side of the store, where he selected a laptop case. He then walked to the other side of the store, and she followed. Yhap stated, "He would select items, and, then, he would conceal [them] behind the laptop case. She would, like, raise up her bag, and he would put [them] into the defendant's bag."

The two then exited the store without paying for the items. Yhap testified he confronted them, and placed Perez in handcuffs. Meanwhile, defendant placed both bags on the floor and began to walk or jog away, when Melendez stopped her. Yhap and Melendez escorted the two to an office in the rear of the store, where they photographed the items in the bag.

Melendez generally confirmed Yhap's version of events. Melendez did not specifically state that defendant raised the bags while Perez placed the items inside. However, he confirmed that she carried both bags into and out of the store. Melendez testified that when he and Yhap identified themselves, "she slowly dropped the bags . . . [a]nd, then, she slowly tried to, like, make off — like — almost like a slow-motion running." She was apprehended.

The loss prevention officers also testified that defendant and Perez made self-incriminating statements. Melendez stated that defendant asked "if there's any way Chris Perez can just take all the charges, and to just let her go."[3] She explained that she was "concerned over opening up her own . . . used car sales lot" and feared "she wouldn't get the license if she got charged. . . ."

Yhap testified that Perez told him "that he was responsible for it, because she's trying to open up a car dealership and he doesn't want her to take the rap for it." Defense counsel confronted Yhap with his report of the incident, which did not

---

[3] Defense counsel initially objected to the introduction of defendant's statement, asserting that it was not provided in discovery. However, in a N.J.R.E. 104 hearing conducted in the midst of Melendez's testimony, it was established that defendant's statement was recorded in Melendez's report that the State provided in discovery.

include that statement. Instead, it stated, "'During the interview Christopher Perez admitted to stealing the items for his boss. And since he overheard management calling the local PD he said he wasn't going to give us any information unless we let them walk." None of the alleged statements by defendant and Perez were recorded, nor did the two sign written statements. Also, Yhap explained that because of his inexperience — he had worked at Apple for only a few months — he did not preserve video surveillance of the incident before it was over-written.

B.

As noted above, defense counsel advised the State before trial that defendant intended to assert a defense of mistake or lack of intent. Defense counsel's pre-trial letter apparently notified the State that Perez intended to testify that he stole the items without defendant's knowledge. Defense counsel represented that Perez would testify that he ran into defendant in the store; she asked that he take her phone number; so, he handed the bags to her while he did so. In response to defense counsel's letter, the State filed a motion seeking permission under N.J.R.E. 404(b) to introduce evidence of the prior alleged shoplifting incident involving Perez and defendant.

However, following jury selection, defense counsel announced that she did not intend to call Perez as a witness,

although he was present in the courthouse and available. Nonetheless, the State sought a ruling on the admissibility of the 404(b) evidence, because defense counsel stated that defendant might testify.

Judge Paone ruled that the evidence could not be introduced during the State's case in chief. As for whether it could be offered in rebuttal, he stated, "I can't decide whether 404(b) evidence is admissible until the State['s] case is done; [and] your case is done." The judge stated that he would give defendant "an indication as to . . . whether I believe the evidence would be admissible . . . if the testimony were consistent with the facts as represented . . . ." He would do so, to "inform [her] . . . decision whether to testify." However, the judge emphasized that he would not make a 404(b) decision "prematurely." He inquired whether that was "all right" with defense counsel, who responded, "Okay."

After the State rested, counsel revisited the 404(b) issue. Defense counsel proffered that defendant would testify that Perez tried to get defendant's phone number — slightly different from the previous proffer that defendant asked Perez to take her phone number — and when Perez took out his phone, he handed one of the bags to defendant. They walked out of the store together. According to the proffer, defendant would testify she

was unaware the bag contained unpurchased items. Counsel conceded this version was at odds with the two loss prevention officers' observation that she held both bags.

The judge reiterated he could not make a final decision on the admissibility of the 404(b) evidence until he heard defendant's testimony. However, based on the State's representation of what the video of the prior incident would show, the judge stated his tentative view that the evidence would be admissible. Defense counsel inquired whether the court's view would remain the same if defendant simply gave a general denial on the stand. The judge stated he was unsure. Defendant was given until the following day to determine whether she intended to testify.

The next morning, the court decided to view the video of the previous incident in open court.[4] The court's decision to view the recording also enabled defendant to view it for the first time. The video apparently consisted of various clips from the store cameras, some showing the same actions but from different angles. As described on the record, the video apparently depicted defendant, Perez, and the third person — who

_____

[4] Once the court considered the video, it should have been marked for identification. See Manata v. Pereira, 436 N.J. Super. 330, 336 n.2 (App. Div. 2014). Furthermore, the record does not reflect that the court reviewed or considered defendant's post-arrest statement following the Target incident.

was described as a Target employee — standing in front of a locked case of video games and gaming consoles. Perez opened the case with a key and placed various items in the shopping cart. At one point, defendant herself placed a laptop case in the cart. There was no obvious attempt to conceal the placement of the items in the cart. Defendant later wheeled the cart around the cashiers' section of the store, toward the exit doors. She was stopped by loss prevention officers.

Defense counsel asserted at one point that the video depicted defendant handing currency to Perez, which supported defendant's claim that she believed that the third person involved had arranged for defendant to purchase the various items at a discount. She allegedly believed that the items in the cart had been paid for. At one point, while Judge Paone viewed the video, defendant interjected that she intended to pay for the items.[5]

Judge Paone reviewed the four prongs of the test for determining the admissibility of other crimes or wrongs evidence, as set forth in State v. Cofield, 127 N.J. 328, 338 (1992):

---

[5] Defendant was charged with third-degree shoplifting (concealment), pursuant to N.J.S.A. 2C:20-11(b)(2), in connection with the Target incident. She pleaded not guilty and was admitted to the pretrial intervention program.

> 1.  The evidence of the other crime must be
> admissible as relevant to a material issue;
>
> 2.  It must be similar in kind and
> reasonably close in time to the offense
> charged;
>
> 3.  The evidence of the other crime must be
> clear and convincing; and
>
> 4.  The probative value of the evidence must
> not be outweighed by its apparent prejudice.
>
> [Id. (internal quotation marks and citation
> omitted).]

Before viewing the video, Judge Paone stated, "without having the benefit of her testimony . . . all I can do is indicate to you that there . . . would be a likelihood that . . . this evidence would be admissible." He stated that prong one was likely met because the evidence would refute defendant's proffered defense that she removed the items from the Apple Store by mistake.

Prong two was met because the prior incident occurred within several months of the charged crimes, and involved defendant's removal of items from a store without paying, in concert with Perez. He was unpersuaded by defense counsel's argument that the two incidents were dissimilar. Counsel alleged that in the first incident, there was no apparent effort to conceal the placement of the items in the cart, while in the

A-4061-12T1

second, there was an apparent effort to conceal the items placed in the A&F bag.

As for prong three, once he viewed the video, Judge Paone stated that there appeared to be clear and convincing evidence that defendant participated in a prior shoplifting. However, he left open the door for defendant to provide "an explanation for that conduct" depicted on the video.

Judge Paone did not expressly address prong four, balancing the prejudice against the 404(b) evidence's probative value. However, he implicitly found it was satisfied by indicating, tentatively, that the evidence would be admissible. The court was unpersuaded by defense counsel's argument that there was less prejudicial evidence — consisting of Yhap's and Melendez's testimony — to rebut defendant's proffered defense.

Defendant declined to testify. The jury deliberated for about half an hour before returning its verdict. Defendant maintained her innocence at sentencing. The court imposed a three-year term of probation, subject to conditions regarding employment and community service.

Defendant raises two issues on appeal:

> 1. THE TRIAL COURT'S INDICATION THAT THE DETAILS OF A PREVIOUS CHARGE OF SHOPLIFTING WOULD BE ADMISSIBLE IN REBUTTAL IF DEFENDANT TESTIFIED VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO TESTIFY ON HER OWN BEHALF.

2. THE PROSECUTOR'S IMPROPER COMMENT DURING HIS SUMMATION CONSTITUTED PROSECUTORIAL MISCONDUCT WHICH DENIED DEFENDANT A FAIR TRIAL.

## II.

### A.

Defendant complains that the court declined to issue a definitive decision on the admissibility of the 404(b) evidence, despite the State's motion, and defendant's interest in a firm decision. Defendant argues that the court was mistaken in deciding to await defendant's testimony, given the defendant's proffer. Furthermore, defendant argues that the court's tentative opinion was, in effect, a ruling on the issue, which misapplied the Cofield factors and deprived defendant of her right to testify.

We are unpersuaded. We review a trial court's application of N.J.R.E. 404(b) for an abuse of discretion. State v. Marrero, 148 N.J. 469, 483-84 (1997). The State proposed to use the other-crimes-or-wrongs evidence to prove intent, and the absence of mistake. See N.J.R.E. 404(b) (stating that other-crimes-or-wrongs evidence "may be admitted . . . as proof of . . . intent . . . or absence of mistake or accident when such matters are relevant to a material issue in dispute."). We discern no error in Judge Paone's determination that a ruling on

the admissibility of the 404(b) evidence should await defendant's testimony.

Our courts generally disfavor in limine rulings on evidence questions. "[A] trial judge generally should not rule on the admissibility of particular evidence until a party offers it at trial." State v. Cary, 49 N.J. 343, 352 (1967). "[M]ost evidence problems are best and most expeditiously settled in the atmosphere and context of the trial." State v. Hawthorne, 49 N.J. 130, 143 (1967). Pre-trial evidentiary rulings are often made "in the abstract and not in the context of facts adduced at trial"; consequently, "[r]equests for such rulings should be granted only sparingly." Bellardini v. Krikorian, 222 N.J. Super. 457, 464 (App. Div. 1988). "Where . . . the decision on the in limine motion itself requires an analysis of evidence yet to be presented or credibility determinations, such motions should ordinarily be denied until a sufficient predicate is established." Berrie v. Berrie, 252 N.J. Super. 635, 641-42 (App. Div. 1991).

Moreover, "[i]n the event the trial court addresses [evidentiary] issues in a pre-trial proceeding, the trial court must be sensitive to the need to revisit its pre-trial rulings in light of the developing record at trial." State v. Jones, 308 N.J. Super. 15, 46 (App. Div. 1998). "The record developed

at trial may differ from the record developed below on the parties' motions, perhaps substantially." State v. Crumb, 277 N.J. Super. 311, 321 (App. Div. 1994).

On the other hand, we recognize that, as a general principle, a trial court retains the discretion, in appropriate cases, to rule on the admissibility of evidence pre-trial. See Hawthorne, supra, 49 N.J. at 142 ("This is not to say that under no circumstances can pretrial motions to exclude evidence be made, or that in some situations evidence problems cannot be settled at the pretrial conference. Obviously there is an area in which the judge's discretion may operate."). See also Berrie, supra, 252 N.J. Super. at 641 ("In limine motions have their place where issues can be eliminated as a matter of law prior to trial.").

In particular, our criminal practice rules expressly direct courts to conduct pretrial hearings "to resolve issues relating to the admissibility of statements by defendant, pretrial identifications of defendant, sound recordings, and motions to suppress." R. 3:9-1(d). "[U]nless otherwise ordered by the court" such hearings are "held prior to the pretrial conference." Ibid. "Upon a showing of good cause, hearings as to admissibility of other evidence may also be held pretrial." Ibid. In particular, a hearing under State v. Sands, 76 N.J.

127 (1978), to determine the admissibility of prior convictions, may be held pre-trial. State v. Whitehead, 104 N.J. 353, 358 (1986) ("In practice, the trial court makes its determination at a hearing held before trial or, if at trial, out of the presence of the jury.").

Our Court has cautioned that other-crimes-or-wrongs evidence should not be admitted unless it "is material to a fact genuinely in issue." State v. Stevens, 115 N.J. 289, 302 (1989). The fact that intent is an element of the offense does not invariably justify admission of 404(b) evidence to prove intent.

> That evidence of prior crimes may have some bearing on motive, intent, plan, absence of mistake, knowledge or identity . . . does not automatically warrant its admission. If the defense in the instant case had been alibi or a general denial, these prior convictions might properly have been excluded even though they were relevant to intent. While intent would still be a necessary element of the prosecutor's case, the question of motive or intent would not have been raised by the evidence and thus the probative value of the prior offenses would likely be outweighed by their prejudicial effect.
>
> [State v. Atkins, 78 N.J. 454, 462 (1979) (citations omitted).]

We have previously held that other-crimes-or-wrongs evidence should be allowed "only to meet an issue relating to an element of the offense which is projected by defendant either

before or during trial or is necessarily raised by the evidence." State v. Peltack, 172 N.J. Super. 287, 293 (App. Div.), certif. denied, 84 N.J. 474 (1980). On the other hand, the Court has rejected the suggestion that other-crimes-or-wrongs evidence is inadmissible "to prove a material element of a crime not specifically contested by the defendant nor otherwise established by the evidence." Stevens, supra, 115 N.J. at 307. Such evidence may be necessary to prove an essential element of the offense. Ibid. However, we have held that an assertion in an opening statement does not suffice to "open the door" to 404(b) rebuttal evidence. State v. Anastasia, 356 N.J. Super. 534, 543 (App. Div. 2003) ("Opening statements are not evidential and should not be responded to by 'rebuttal' evidence.").

We are persuaded that a trial court may, in its discretion, await the conclusion of the defendant's case before deciding the admissibility of 404(b) evidence to prove intent, or lack of mistake.[6] That view is supported by persuasive authority. See,

---

[6] "When the cases refer to admission of other-crime evidence to show the intent of the defendant, it is often just as accurate to describe the evidence as negating the defenses of mistake and accident." Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, comment 11 on N.J.R.E. 404(b) (2014). See also State v. Sexton, 160 N.J. 93, 98-107 (1999) (discussing N.J.S.A. 2C:2-4(a) and mistake of fact as a defense). Nonetheless, the
(continued)

e.g., <u>United States v. Figueroa</u>, 618 <u>F.</u>2d 934, 939 (2d Cir. 1980) ("[I]f the evidence is offered to prove the defendant's knowledge or intent, the offer of similar acts evidence should await the conclusion of the defendant's case and should be aimed at a specifically identified issue.");[7] <u>United States v. Benedetto</u>, 571 <u>F.</u>2d 1246, 1249 (2d Cir. 1978) (same); <u>Moor v. State</u>, 709 <u>P.</u>2d 498, 506 (Alas. 1985) ("[W]here the prosecution wishes to use the evidence to rebut an anticipated defense, the trial court should seriously consider delaying the offer until the prosecution's rebuttal in order to ensure that the anticipated defense will in fact be raised.").

Awaiting the rebuttal case enables the court to confirm that the defense will actually be offered, and to assess the contours of the defense. That information will inform the court's decision regarding the relevance of the 404(b) evidence,

---

(continued)
State's proof of absence of mistake may be more likely to come into play only after a defendant has raised the defense.

[7] The Second Circuit has recognized an exception to this rule "where there was no doubt that the issue of intent would be disputed in the case." <u>United States v. Colon</u>, 880 <u>F.</u>2d 650, 660 (2d Cir. 1989) (citing <u>United States v. Caputo</u>, 808 <u>F.</u>2d 963, 986 (2d Cir. 1987); <u>United States v. Reed</u>, 639 <u>F.</u>2d 896, 906-07 (2d Cir. 1981)). In <u>Colon</u>, where there existed uncertainty after opening statements regarding the defense that defendant would ultimately adopt, the court held, "[T]he proper course was to await [the defendant's] decision before permitting the similar acts evidence to enter the case by means of an opening statement or a witness' testimony." 880 <u>F.</u>2d at 661.

A-4061-12T1

and whether its probative value is outweighed by its prejudicial effect.  See Figueroa, supra, 618 F.2d at 939 (stating that awaiting until defense rests "enables the trial judge to determine whether the issue sought to be proved by the evidence is really in dispute and, if so, to assess the probative worth of the evidence on this issue against its prejudicial effect"); United States v. Adderly, 529 F.2d 1178, 1182 (5th Cir. 1976) ("It is only after the defense is presented that the trial judge can know if intent or knowledge or any exception to the exclusion rule is truly a disputed issue in the trial.").

Applying the foregoing principles, we discern no abuse of discretion in Judge Paone's decision to postpone a ruling on the admissibility of evidence of the prior alleged shoplifting until defendant testified.  The precise contours of defendant's proposed testimony were unclear.  More importantly, it was virtually impossible to predict what defendant might say once subjected to cross-examination.  Even a general denial on direct examination would have allowed cross-examination on the basis for the denial.  Conceivably, admissions by defendant on cross-examination could constitute less prejudicial evidence of her lack of mistake or intent than the video of the alleged shoplifting at Target.  See State v. P.S., 202 N.J. 232, 256 (2010) ("[I]n assessing the fourth prong [of the Cofield test],

courts should consider whether the matter can be proved adequately by other evidence."); Stevens, supra, 115 N.J. at 303 (same).

We also conclude that the trial judge did not abuse his discretion in deciding to offer his tentative view on the admissibility of the evidence of the prior incident, based on the limited information available. When the judge proposed to do so before opening statements, defense counsel did not object. Defendant has provided no authority — and we are aware of none — that precludes a trial judge from reasonably indicating his or her preliminary views on a factual or legal issue, pending the submission of proofs, legal authority, or argument. Such expressions assist counsel in tailoring their proofs and presentations. However, ultimately, it is the court's decision — not its tentative expressions — that provides a basis for appeal. "[A]ppeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion." Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001).

A defendant's right to testify in his or her own defense is an essential element of due process. State v. Savage, 120 N.J. 594, 626 (1990). However, the decision whether to testify is a "strategic or tactical decision to be made by a defendant with

the advi[c]e of . . . counsel." State v. Bogus, 223 N.J. Super. 409, 423 (App. Div.), certif. denied, 111 N.J. 567 (1988). Defendant must bear the consequences of her decision in this case. The judge did not infringe her rights by sharing his tentative views on the 404(b) issue, while declining to rule until the defense rested.

We also reject defendant's argument that the judge's tentative opinion was, in actuality, a ruling on the merits. The judge was scrupulous in stating that he was withholding a final decision until defendant testified. Consistent with the foregoing, we also decline to address defendant's arguments that the court erred in its expressed view that the evidence of the prior incident was likely admissible. The court did not definitively rule on its admissibility.

In any event, defendant has failed to provide us with an adequate record to review a decision on the merits. We have not been provided with the 404(b) evidence that the State sought to introduce — the video of the prior alleged shoplifting at Target. Consequently, we are unable to review a finding that the evidence was clear and convincing that defendant participated in a prior shoplifting. Nor can we fully assess the potential prejudice from the introduction of such evidence. See R. 2:6-1(a) (stating that the appendix "shall contain . . .

such other parts of the record . . . as are essential to the proper consideration of the issues"); <u>see also</u> <u>Cmty Hosp. v. Blume Goldfaden</u>, 381 <u>N.J. Super.</u> 119, 127 (App. Div. 2005) ("Nor are we obliged to attempt review of an issue when the relevant portions of the record are not included.")

B.

We briefly address defendant's argument that she is entitled to a new trial because the prosecutor discussed the significance of the crime of shoplifting in his summation. The prosecutor stated:

> Now, the reason we're here . . . is the shoplifting. I know some of you — shoplifting — and I wish I'd gotten put on a jury for bank robbery or something maybe a little more dramatic. But, the truth is shoplifting is a plague in our society, as well. And . . . there are products that are taken and they aren't paid for. And, now, those companies are losing money and who is paying for that loss? It's passed on, then, in increased prices to the consumers. So there's . . . a reason that that's a crime. There's a reason that we're here. And the reason that we're prosecuting.

Defense counsel did not object.

"Prosecutors are afforded considerable leeway in closing arguments as long as their comments are reasonably related to the scope of the evidence presented." <u>State v. Frost</u>, 158 <u>N.J.</u> 76, 82 (1999). Prosecutorial misconduct is grounds for a reversal where the "misconduct was so egregious that it deprived

the defendant of a fair trial." Id. at 83. "[A]n appellate court must consider (1) whether defense counsel made timely and proper objections to the improper remarks; (2) whether the remarks were withdrawn promptly; and (3) whether the court ordered the remarks stricken from the record and ordered the jury to disregard them." Ibid. When reviewing the comments in a closing statement, "the test is whether the incident is 'clearly capable of producing an unjust result.'" State v. DiPaglia, 64 N.J. 288, 296 (1974) (quoting R. 2:10-2).

If no objection is made to the remarks, they will generally not be deemed prejudicial. Frost, supra, 158 N.J. at 82. Failure to object indicates that defense counsel did not consider them improper at the time they were made, and failure to object also deprives the court of the "opportunity to take curative action." Id. at 84.

"Within reasonable limitations, the prosecutor should be permitted to observe the serious social consequences of the crime charged." State v. Perry, 65 N.J. 45, 48 (1974). In Perry, a police officer was on trial for attempted extortion. Id. The victim of the extortion was a convicted narcotics dealer. Id. In his summation, the prosecutor raised the issue of police corruption and the manner in which a certain class of people was disadvantaged by police corruption. Id. at 46-47.

The Court held that the trial court did not err in allowing the prosecutor to comment on the social consequences of police corruption, particularly since defense counsel did not object, and "the comments comprised an insignificant portion of a summation . . . ." Id. at 54.

Applying these principles, we discern no misconduct, let alone misconduct so egregious that it deprived defendant of a fair trial. To counter the possibility that some jurors might feel that a shoplifting case was not serious enough to warrant their time and effort, the prosecutor briefly, and without emotion, discussed the societal impact of the crime. Defense counsel did not object to the comments. They were a minor part of the State's closing. Particularly in light of the substantial evidence of guilt, the comments were not capable of producing an unjust result.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4061-12T1