**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1110-17T3

CATHERINE HEMINGWAY,

    Plaintiff-Appellant,

v.

LAUREN BALSAMO and
SHARON BALSAMO,

    Defendants-Respondents.

Argued January 30, 2019 - Decided April 9, 2019

Before Judges Ostrer and Currier.

On appeal from Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2612-14.

Tracey C. Hinson argued the cause for appellant (Hinson Snipes, LLP, attorneys; Timothy J. Foley, of counsel; Tracey C. Hinson, on the briefs).

John V. Mallon argued the cause for respondents (Chasan Lamparello Mallon & Cappuzzo, PC, attorneys; John V. Mallon, of counsel and on the brief; Richard W. Fogarty, on the brief).

PER CURIAM

In this personal injury action, plaintiff Catherine Hemingway appeals from the no cause for action verdict following a jury trial. Plaintiff alleges the trial court made several evidential errors that should have resulted in a mistrial. After a review of the contentions in light of the record and applicable principles of law, we affirm.

We derive the facts from the evidence presented at trial. Plaintiff was involved in a motor vehicle accident in December 2012, when the car in which she was a rear seat passenger was struck from behind. Two months later, plaintiff began treatment with a chiropractor, complaining of neck and back pain. The chiropractor recommended a CT scan and x-rays, and prescribed medication. Plaintiff remained under the chiropractor's care for six months. Plaintiff also treated with an orthopedic group, and underwent a lumbar epidural injection. She sought the care of a neurosurgeon, had EMG studies and MRI studies of her neck and back, and treated with a pain management physician who prescribed various medications.

The jury learned from plaintiff and her expert orthopedic doctor that she was involved in a motor vehicle accident in 2002, injuring her neck and back. Plaintiff stated she fully recovered from those injuries. However, in 2005, plaintiff stated she began to go to the chiropractor again for "mild back and neck

A-1110-17T3

pain." She recalled also seeing the chiropractor for the same reason in 2008. In January 2012, plaintiff returned to the chiropractor for pain in her neck and back and treated with him until August 2012. Because of her continued pain, plaintiff sought the care of an orthopedist in March 2012. She was referred for physical therapy and an MRI of the cervical spine. Following another car accident in December 2014, plaintiff visited the emergency room complaining of pain in her legs, back, and hip.

Plaintiff's expert orthopedic expert – David Weiss, D.O. – reviewed medical records and performed a physical examination. He noted that plaintiff advised she recovered from her 2002 motor vehicle accident. However, in 2008 plaintiff began to experience neck and low back pain and she started a course of treatment, with a chiropractor and orthopedist, which continued until the summer of 2012. Dr. Weiss testified that his review of a 2010 lumbar MRI revealed disc bulges at L4-5 and L5-S1. He found multilevel disc bulges and age-related changes in reviewing a March 2012 lumbar MRI.

When Dr. Weiss evaluated plaintiff in September 2016, she complained of constant neck and back pain. He concluded she sustained soft tissue injuries to the cervical and lumbar spines in the 2012 accident and herniated discs at C3-4 and L5-S1. He described her as having aggravated pre-existing cervical and

lumbar spine pathology shown on MRI studies performed prior to the 2012 accident. Dr. Weiss said he did not see herniated discs in the cervical or lumbar spine in any of the imaging studies done before the 2012 accident.

On cross-examination, Dr. Weiss conceded he did not see a herniated disc in the lumbar spine on a 2013 MRI. He first noted a L5-S1 herniated disc in an MRI done in 2015 – after the 2014 motor vehicle accident. However, when the doctor reviewed a 2016 lumbar spine MRI, he noted the herniation was no longer present; it had been "reabsorbed."

The defense presented Alan Sarokhan, M.D., an orthopedic surgeon, as their expert at trial. Dr. Sarokhan advised that when he examined plaintiff in April 2016, her primary complaint was back pain. He testified as to his review of numerous MRI studies: a 2008 MRI of the neck showed "multiple levels of degeneration of discs" and "arthritic changes," which he described as typical findings in an MRI of a person in their forties or fifties. The doctor's review of a March 2012 cervical MRI revealed multilevel degenerative disc and joint disease, similar to the findings on the 2008 MRI. When the doctor reviewed a 2015 cervical spine MRI, he stated there were no changes from the prior films.

Dr. Sarokhan also looked at MRI films of plaintiff's lumbar spine. He testified he saw degenerated and bulging discs at L4-5 and L5-S1 on a 2015

4

MRI. He opined the findings were "consistent with the patient's age and with the findings elsewhere in her spine."[1] The doctor concluded plaintiff had not suffered a permanent orthopedic injury in the 2012 accident. His review of additional MRI studies of the neck and back from 2013 and 2016 did not change his opinion.

Several days before trial was scheduled to start,[2] the parties filed pre-trial information statements listing in limine motions to edit both orthopedic experts' de bene esse videotaped depositions.[3] Plaintiff also advised she intended to present seven in limine motions, including barring any mention of the 2014 accident, barring reference to any prior injuries, accidents, and lawsuits, and barring hearsay testimony from defendant.

The record reflects that when the court convened on September 12, 2017, plaintiff had not filed her motions with eCourts and Judge Janetta D. Marbrey

---

[1] Plaintiff was forty-seven years old at the time of the accident.

[2] We were provided transcripts for September 12, 13, and 14, 2017. It appears there were also trial proceedings on an earlier day, including the selection of a jury and some discussion of the in limine motions. That transcript was not provided to us.

[3] Defendants filed their pretrial statement on September 7; plaintiff filed her statement the following day. Both Dr. Weiss and Dr. Sarokhan testified at trial through videotaped depositions.

A-1110-17T3

requested she do so prior to a consideration of them. As a result, Judge Marbrey began the day on September 12 addressing defendants' motion to edit Dr. Sarokhan's de bene esse testimony. She methodically went through each objection, providing reasons for her rulings.

After swearing in the jury and excusing them for lunch, Judge Marbrey addressed plaintiff's requested redactions to Dr. Sarokhan's testimony. She again considered each objection and made rulings. When she had addressed each redaction, the judge went through all of the edits required to the videotape, combining her rulings on both parties' objections.

Next, Judge Marbrey considered the parties' objections to Dr. Weiss's de bene esse testimony and carefully ruled on each request. With regard to plaintiff's remaining in limine motions, the judge found she could not determine the admissibility of certain evidence without hearing the particular question posed during cross-examination. She stated she would handle objections during testimony at sidebar. However, Judge Marbrey did bar counsel from discussing surgery during the opening statements. She advised she would listen to the testimony regarding surgery and make a further ruling at the appropriate time. The day concluded with the opening statements and plaintiff's testimony.

The following day plaintiff requested a mistrial. She argued that the court had "allowed prejudicial and inadmissible evidence before the jury that . . . prejudiced [plaintiff's] ability to have a fair trial." Plaintiff's counsel contended she was deprived of the opportunity to argue her in limine motions, and defense counsel improperly used medical records in her cross-examination of plaintiff.

In denying the motion for a mistrial, Judge Marbrey stated counsel's tardy filing of the motions affected the manner in which the court had to handle the applications. Plaintiff's counsel did not bring the motions on the first day of trial, but instead faxed them on Sunday afternoon. The motions were not filed when the parties arrived at court Monday morning. Nevertheless, the judge spent an abundant period of time reading the experts' testimony and ruling on counsel's redaction requests. This permitted counsel to edit the videotapes so the testimony could be played on the third day of trial. Judge Marbrey further stated that after she heard the expert's testimony, she would permit plaintiff to renew her motion as to the admissibility of evidence regarding other accidents and injuries.

Following the testimony of Dr. Weiss, Judge Marbrey advised counsel that she intended to further redact the videotaped testimony of Dr. Sarokhan by

7

removing all testimony regarding surgical consultations with non-testifying physicians.

Plaintiff renewed her motion for a mistrial after both parties had rested. She reiterated that defense counsel had improperly questioned plaintiff with certain medical records. Defense counsel responded that the particular records were used to impeach statements made by plaintiff during her direct examination. One was the emergency room intake sheet in plaintiff's handwriting memorializing her complaints following the 2014 accident; those complaints included back pain. The second record was a note in the 2005 chiropractic records that plaintiff was seeking treatment for neck and back pain. The record was used to establish the date plaintiff sought treatment from the chiropractor prior to the 2012 accident.

Judge Marbrey found the records were appropriate tools for cross-examination and impeachment purposes as they related to complaints of and treatment for plaintiff's neck and back – the same body parts she claimed were injured in 2012. The judge, therefore, denied the mistrial motion.

The jury returned a no cause for action verdict. This appeal followed.

On appeal, plaintiff reiterates arguments made before the trial judge, specifically the judge failed to hear plaintiff's in limine motions prior to trial,

erred in rulings on the admissibility of certain evidence, and erred in denying her motion for mistrial.

We review the judge's evidentiary rulings for an abuse of discretion, deferring to the ruling "unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide off the mark that a manifest denial of justice resulted." Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999) (quoting State v. Carter, 91 N.J. 86, 106 (1982)).

We discern no merit to plaintiff's argument regarding Judge Marbrey's consideration of the in limine motions. Despite the last-minute filing of the motions, the judge painstakingly went through each redaction requested by counsel and provided reasons for her rulings. She then went through her rulings a second time to ensure counsel were clear on the required edits.

Judge Marbrey properly exercised her discretion in advising she would handle any objections to the admissibility of evidence at the time of the objection. It was appropriate to consider objections to specific evidence as they arose, so the judge could rule in the context of the proffered testimony and in light of the evidence already presented to the jury. See State v. Cordero, 438 N.J. Super. 472, 484 (App. Div. 2014) (stating "[o]ur courts generally disfavor

9

in limine rulings on evidence questions," and noting that pre-trial rulings are made without the benefit of facts presented at trial).

Plaintiff argues, without citing to specific testimony in the record or rules of evidence, that Judge Marbrey improperly permitted defense counsel to introduce evidence of inadmissible medical records and cross-examined plaintiff with information from records of plaintiff's non-testifying physicians. Our review of the record reveals the judge entertained each objection, permitted counsel to thoroughly present the basis for their objections, and gave reasoned rulings.

During her direct examination, plaintiff discussed a prior accident in which she had injured her neck and back. She also testified to pain in her neck and back for which she sought treatment from various doctors before the 2012 accident. Because plaintiff claimed an aggravation of these prior injuries as well as new injuries from the 2012 accident, it was appropriate for defense counsel to explore these issues with plaintiff. Defense counsel also properly confronted plaintiff with statements she gave in medical records discussed by Dr. Weiss, who informed that he had reviewed and relied on plaintiff's medical records in forming his opinions.

Defense counsel did not cross-examine plaintiff or Dr. Weiss with records not already testified to in direct examination. Nor did she attempt to elicit any opinions of non-testifying physicians. See James v. Ruiz, 440 N.J. Super. 45, 65 (App. Div. 2015).

Plaintiff's general reference to Allendorf v. Kaiserman Enterprises, 266 N.J. Super. 662 (App. Div. 1993) does not support her argument. Allendorf requires that

> [a]party seeking to present evidence of a prior injury or condition relating to an issue of medical causation must show that the evidence has some "logical relationship to the issue in the case." Paxton v. Misiuk, 34 N.J. 453, 460 (1961). Moreover, this logical relationship generally must be established by appropriate expert medical opinion. See Ratner v. General Motors Corp., 241 N.J. Super. 197, 203-06 (App. Div. 1990).
>
> [Id. at 672-73.]

As Judge Marbrey stated,

> [W]e do have in this case . . . an allegation of prior injury to the neck and back. In fact, this is … not only asserted by the defendant. It is also acknowledged by the plaintiff.
>
> The . . . logical relationship, yes. It's the same area of complaints and there is an aggravation claim.
>
> Dr. Weiss [stated] . . . [plaintiff was] previously injured in that area and [it is] also admitted to -- by the plaintiff and . . . in the records.

11

Because plaintiff alleged an aggravation of a prior injury, it was proper to confront the experts with plaintiff's statements and information reviewed in prior medical records to test the experts' opinions as to the medical causality of the injuries claimed in the subject accident. Here, the jury had to determine whether plaintiff sustained a permanent injury in the 2012 accident. Any evidence pertaining to neck or back pain and treatment to those body parts was admissible as it bore "a logical relationship to the issue in the case." Allendorf, 266 N.J. Super. at 672 (quoting Paxton, 34 N.J. at 460). We see no abuse of discretion in the trial court's management of cross-examination.

In this contentious proceeding, Judge Marbrey patiently considered counsel's motions, objections and arguments, and provided careful and reasoned rulings. Any other arguments presented by plaintiff on appeal lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1110-17T3